# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

SHEILA ALLEN,                                          :

                       Plaintiff,

        -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.          :

Case No. 3:07-cv-132

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6ᵗʰ Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6ᵗʰ Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6ᵗʰ Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6ᵗʰ Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6ᵗʰ Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

2

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 5, 2003, alleging disability from June 1, 2001, due to diabetes, high blood pressure, a thyroid impairment, and chronic bronchitis. (Tr. 48-50; 63-72). Plaintiff's application was denied initially and on reconsideration. (Tr. 31-35; 37-39). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 411-40), who determined that Plaintiff is not disabled. (Tr. 11-23). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe diabetes mellitus and mild chronic obstructive pulmonary disease/emphysema, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 16, ¶ 3; Tr. 19, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to

perform a limited range of light work. *Id.*, ¶ 5. Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 21, 22). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 22, 20 ¶ 11; Tr. 23).

Plaintiff consulted with endocrinologist Dr. Stone in March, 2001, who recommended that Plaintiff take insulin which, at that time, she adamantly refused to do. (Tr. 330-35).

Plaintiff received medical care from Dr. Landes during the period March 22, 2001, through October 30, 2003. (Tr. 273-306). During that time, a pulmonary function study revealed mild obstructive impairment most likely consistent with small airway disease with no significant changes after bronchodilator. *Id.* On October 30, 2003, Dr. Landes reported that Plaintiff's diagnoses were diabetes mellitus, increased cholesterol, COPD, GERD, and asthmatic bronchitis, that Plaintiff continued to smoke, fatigued easily and quickly, experienced shortness of breath secondary to COPD, and that she was able to sit and function well, walk for 30 minutes at a time and for 2 hours in an 8-hour shift, and stand for 4 hours in an 8-hour shift. *Id.* Dr. Landes; office notes reveal that Plaintiff's diabetes was difficult to control. *Id.*

Dr. Landes noted that Plaintiff was losing weight and referred her to Dr. Carrigan, a gastroenterologist, who treated Plaintiff during the period March 19, through July 25, 2003. (Tr. 256-72; 336-48). Dr. Carrigan performed gastrointestinal tests which were negative. *Id.* Dr. Carrigan opined that Plaintiff's weight might improve as her diabetes came under control. *Id.*

Dr. Landes reported on May 4, 2004, that Plaintiff had been his patient for many years, that her diabetes had been very difficult to control although it was getting into better control,

and that Plaintiff also had asthmatic bronchitis and chronic obstructive pulmonary disease with dyspnea on exertion. (Tr. 349). Dr. Landes also reported that Plaintiff was taking insulin and multiple medications, that her prognosis was fair only because of her chronic lung disease complicating her diabetes and her history of smoking. *Id.* Dr. Landes reported further that Plaintiff was limited to sedentary work or part-time work because of her dyspnea on exertion more than anything else, she tired easily, and that she got short of breath quickly. *Id.*

Examining physician Dr. Danopulos reported on October 25, 2004, that Plaintiff smoked one and a half packs of cigarettes a day for the last 30 years and that she quit two months ago, her lungs were clear to auscultation and percussion, her chest excursions were normal, and that her expiration was prolonged. (Tr. 369-81). Dr. Danopulos also reported that the examination of Plaintiff's extremities and musculoskeletal system was normal, and that her deep tendon reflexes were highly exaggerated bilaterally in the upper and lower extremities. *Id.* Dr. Danopulos noted that Plaintiff had mature onset, insulin-dependent, well controlled diabetes, her deep tendon reflexes existed, she did not have any complaints of diabetic neuropathy, her complaints of fatigue were triggered by the fact that she keeps her blood pressure and takes so many medications for that, and that her pulmonary exam indicated early emphysema. *Id.* Dr. Danopulos noted further that Plaintiff's complaints of low back pain were poorly documented, that the objective findings were mature onset and well controlled diabetes, well-controlled hypertension, early emphysema, being treated for hypothyroidism without clinical evidence of hypothyroidism, and lumbar pain rule out left-sided kidney stones. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform any work-related activities like walking, lifting, and carrying was affected in a negative way by her early emphysema. *Id.* Dr. Danopulos opined further that Plaintiff was able to lift/carry up to 20 pounds

5

occasionally and 10 pounds frequently, able to walk at least 2 hours in an 8-hour workday, and her ability to sit was not affected by her impairments. *Id.*

Plaintiff continued to receive treatment from Dr. Landes during the period April, 2004. through April, 2005. (Tr. 387-99). Dr. Landes referred Plaintiff to Dr. Kumar who reported in April, 2005, that Plaintiff's chest was clear, her sensory and neurological exams were normal, that he suspected she had type I diabetes mellitus. (Tr. 400-02).

The record contains a copy of Plaintiff's Blood Glucose Journal covering the period May 25, through June 22, 2005, and which reflects that Plaintiff frequently tested her blood glucose level and that she self-administered insulin. (Tr. 102-255).

On June 14, 2005, Dr. Landes reported that Plaintiff has multiple medical problems which were issues regarding her ability to work, her diabetes has been in poor control although Dr. Kumar felt it had improved, and that pulmonary function tests showed some obstructive impairment. (Tr. 403). Dr. Landes also reported that Plaintiff has a long history of smoking that has affected her ability to breathe, there was a significant problem with deconditioning and because of aches and pains she had not been able to do much, and that she had developed hypothyroidism and iron deficiency anemia. *Id.* Dr. Landes opined that Plaintiff was limited to sedentary work because of the combination of problems, and that she would not be able to tolerate a full day of physically active work. *Id.*

Plaintiff continued to consult with Dr. Kumar, (Tr. 404-10), who reported on July 21, 2005, that Plaintiff was doing much better, she was on multiple doses of insulin, her blood sugars were widely fluctuating, there was always the increased risk of hypoglycemia, and that there was always the potential for miscalculating carbohydrates resulting in widely fluctuating blood sugars.

6

(Tr. 405-06). Dr. Kumar also reported that it was difficult for him to say whether Plaintiff's blood sugar control required her to work on only a limited basis, that he would leave it up to the judgment of Plaintiff and her employer, and that if there were definite documentation as to more stable blood sugars on her non-workdays and widely fluctuating blood sugars on workdays that would give some information regarding further plans as far as limiting her working hours. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting her treating physician Dr. Landes' opinion and by finding that she was not entirely credible. (Doc. 7).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of*

*Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

      While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993).  A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability.  *Id.*  Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

      In evaluating Dr. Landes' opinions, Judge Padilla accepted Dr. Landes' 2003 opinion as to Plaintiff's residual functional capacity but rejected his 2004 and 2005 opinions.  (Tr. 19-21).  Specifically, Judge Padilla determined that Dr. Landes' 2003 opinion was well supported by the evidence but that his 2004 and 2005 opinions, were not.  *Id.*  This Court cannot say that the Commissioner erred in this regard.

      In 2003 Dr. Landes opined that Plaintiff was capable of sitting and functioning well, walking for 30 minutes at a time and for 2 hours in an 8-hour shift, and stand for 4 hours in an 8-hour shift.  In contrast, in 2004 and 2005 Dr. Landes opined that Plaintiff was capable to performing, at best, sedentary work.  However, as noted by Judge Padilla, Dr. Landes' 2004 and 2005 opinions are not supported by the clinical evidence of record.  Specifically, the record does not indicate that Plaintiff's impairment worsened between the time Dr. Landes offered his 2003 opinion and the times

he offered his subsequent opinion. In addition, Dr. Landes' 2004 and 2005 opinions are inconsistent with Dr. Danopulos' opinion that Plaintiff was able to lift/carry up to 20 pounds occasionally and 10 pounds frequently, and walk at least 2 hours in an 8-hour workday, and that her ability to sit was not affected by her impairments. In addition, Dr. Landes' 2004 and 2005 opinions are inconsistent with consulting physician Dr. Kumar's opinion that Plaintiff was "doing much better" as well as with the reviewing physicians' opinions. *See* Tr. 307-15. Finally, Dr. Landes' opinions that Plaintiff is able to perform, at best, sedentary work, is inconsistent with Plaintiff's reported activities which include driving every day, cooking, loading the dishwasher, running the vacuum, doing laundry, shopping, going out to eat, going to church thre times a week, listening to the radio, and reading the Bible. (Tr. 414-22).

Under these facts, the Commissioner did not err by rejecting Dr. Landes' 2004 and 2005 opinions as to Plaintiff's residual functional capacity.

Plaintiff argues next that the Commissioner erred by failing to find that she was entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In rejecting Plaintiff's subjective complaints and allegations, Judge Padilla determined that those complaints and allegations were not supported by the objective medical evidence and were inconsistent with the other evidence of record. (Tr. 21). This Court agrees with that conclusion. Specifically, for the same reasons that the Commissioner had for rejecting Dr. Landes' 2004 and 2005 opinions, the Commissioner had an adequate basis for rejecting Plaintiff's allegations of complete disability. For example, the objective medical findings do not support Plaintiff's allegations, Drs. Kumar's and Danopulos' opinions as well as the reviewing physicians' opinions are inconsistent with Plaintiff's allegations, as are Plaintiff's self-reported activities.

Plaintiff argues that her fluctuating blood sugars support her allegations of disability. However, the presence of an impairment alone is never conclusive evidence of disability. *See,*

10

*Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990). Indeed, mere presence of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.* Under the facts of this case, the Commissioner did not err by finding that Plaintiff was not entirely credible.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

November 19, 2007.

**s/ Michael R. Merz**
Chief United States Magistrate Judge

11

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).